No. 34,822

P. L. KELLOGG, Guardian of the Person and Estate of William M. Matthews, an Insane Person, *Appellee*, v. CHARLES RICHMOND, *Appellant*.

(103 P. 2d 868)

Opinion filed July 6, 1940.

*Stanley E. Toland*, of Iola, for the appellant.

*John W. Breyfogle, Jr.*, of Olathe, and *Samuel A. Dew*, of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was originally an injunction suit. It was instituted by the guardian of an insane ward to enjoin the defendant from interfering with plaintiff's exclusive possession and management of a quarter-section farm in Johnson county, to enjoin defendant from exercising any control over the farm, its water supply and

cattle belonging to plaintiff and to plaintiff's tenant. The pleadings developed issues involving title to the land and the right of possession. A temporary injunction was granted at the commencement of the action on September 29, 1939. The pleadings consisted of the petition, answer and reply. Defendant demurred to the reply. The demurrer was overruled and the correctness of that ruling constitutes the sole question on appeal.

The pleadings are rather voluminous. In the view we take of the question presented, it will be neither necessary nor helpful to narrate at length all the averments contained in the respective pleadings. It will suffice to state such facts as are necessary to present the principal issue involved.

The petition in substance alleged: Plaintiff was appointed guardian of one William M. Matthews, an insane person, on August 10, 1939, in the probate court of Johnson county. Plaintiff took possession of the land on the date of his appointment and has managed it and retained possession thereof. The ward obtained title to the land by warranty deed October 23, 1933. The deed was recorded November 1, 1933. The ward is the owner and record titleholder of the real estate and was in possession thereof until possession was taken by plaintiff. On September 21, 1939, defendant, without knowledge or consent of plaintiff and without lawful right or authority, established temporary living quarters in a dilapidated dwelling on the farm. Plaintiff, on September 22, 1939, made formal demand upon defendant to leave the premises and to cease interfering with plaintiff's tenant and otherwise trespassing upon the premises, but that defendant has continued such interference and trespass.

The petition, in substance, further alleged acts of interference by defendant with plaintiff's possession and alleged acts by defendant designed to disclose irreparable damage to the farm and interference with cattle and other property belonging to plaintiff or plaintiff's tenant. The petition asked that the temporary injunction be made permanent.

The sufficiency of the petition was in nowise challenged. Defendant answered. Defendant claimed title to the land or at least the right of possession. His claim was based upon the fact he was the closest blood relative of the insane ward, a lawyer, living in this part of the United States, and that it had been the intention and desire of the ward, who owned considerable property, to have the

defendant near him and that, in conformity with such intention and desire, he had executed to defendant, Charles L. Richmond, a warranty deed to the land involved on June 1, 1937, which had been placed in escrow, together with the following agreement, to wit:

"Stanley, Kan., June 1, 1937.

"The attached warranty deed is to be held in escrow by the State Bank of Stanley until such time as the grantor and the grantee of the same mutually agree that it shall be delivered to the said Charles L. Richmond.

"Wm. Matthews,
"Chas. L. Richmond."

Matthews' wife did not sign the deed or agreement. The answer admitted the deed had never been delivered. Defendant, however, also relied upon alleged oral representations of William M. Matthews, both prior and subsequent to the execution of the deed and escrow agreement, to the effect that defendant was to obtain title to and possession of the farm. He alleged that in conformity with such oral promises and representations he was placed in possession of the farm by William M. Matthews. The answer also alleged that by reason of the oral representations and promises made by Matthews, the defendant had abandoned his retail furniture business at Fayetteville, Ark., and had taken possession of the farm in question. The answer pleaded additional facts calculated to disclose the execution of the oral agreement. Defendant alleged Matthews failed to complete a property settlement with his wife and for that reason, and none other, the deed in escrow had never been delivered. Defendant alleged that in equity and in good conscience and by reason of equitable estoppel, Matthews and his guardian were estopped from asserting title and possession to the real estate and that he should be adjudged to be the owner of the property, but that if the court should find he was not entitled to the ownership of the land on the ground of equitable estoppel, that then and in that event, he should be allowed to remain in possession of the land for the reason that the deed remained in escrow and was still subject to delivery. Defendant also sought an accounting during the period of plaintiff's possession under the temporary injunction, and for such damages as plaintiff had caused to the property during his possession.

In the reply plaintiff admitted the execution of the escrow agreement, admitted a property settlement had not been made between Matthews and his wife and asserted defendant was entitled to no

equitable interest in the property. The reply admitted some other allegations contained in the answer which are not determinative of the question before us and do not require notice at this stage of the proceeding.

The reply also contained a general denial of all new matters alleged in the answer, and further specifically pleaded that William M. Matthews was insane prior to and at the time the deed and escrow agreement were executed and at the time of making all the alleged statements and representations upon which defendant relied as the basis of his title and right to possession, and that Matthews' insane condition at such times was known to the defendant.

The reply further, in substance, alleged: The deed and agreement deposited in the bank conveyed no interest to defendant and did not entitle him to the right of possession; the papers deposited in the bank did not constitute an escrow, but if held to constitute an escrow then no delivery of the deed, under the terms of the escrow, could be made by the bank until the grantor's consent to delivery was obtained; the alleged escrow provided only for delivery upon future mutual agreement that the deed be delivered; under that agreement Matthews was not obliged ever to consent to delivery, and the agreement was void for want of mutuality; the deed and agreement were without valid consideration; Matthews had asserted full ownership and right to possession, with defendant's knowledge and consent, at all times since the alleged escrow was executed on June 1, 1937 (here various acts by which Matthews asserted ownership were alleged); defendant had asserted no title or right to possession until after Matthews was declared insane on August 10, 1939; defendant is estopped from now asserting claim to title or possession; the alleged oral agrement upon which defendant relies is at variance with the alleged escrow and the alleged oral agreement is unenforceable under the statute of frauds.

The demurrer to the reply was as follows:

"Comes now the defendant and demurs severally to the several defenses set forth in plaintiff's reply on the ground that each is insufficient to state a defense to defendant's answer."

No motion had been leveled against the reply to require plaintiff to separately state and number the several defenses to new matter alleged in the answer. The reply contained a general denial of all oral representations and promises alleged in the answer to have been made by Matthews and a denial of the oral agreement alleged to

have been made between Matthews. and the defendant. Whether such representations and oral agreement had been made thus become issues of fact. For the purpose of the demurrer it was admitted that such representations and oral agreement had not been made. The demurrer to the reply was, therefore, properly overruled. (*Lofstead v. Insurance Co.*, 110 Kan. 455, 204 Pac. 530.) See, also, 49 C. J. 447, § 553.

Furthermore, the demurrer admitted the insanity of Matthews at all times germane to this lawsuit. The insanity of Matthews admitted for the purpose of the demurrer, likewise constituted a complete defense to all new matter alleged in the answer.

Defendant further insists a demurrer searches the record and condemns the first pleading, which is defective in substance. Plaintiff concedes that to be the general rule. We fail to see how defendant can effectually invoke that doctrine now for the sole purpose of testing the sufficiency of his own answer before trial. That obviously is his purpose. He concedes the petition states a cause of action. Plaintiff did not demur to defendant's answer, but replied to the new matter contained therein, as he was at liberty to do under the code. (G. S. 1935, 60-717.) No one had challenged the sufficiency of the answer. Defendant now seeks to have his demurrer to the reply applied to his answer for the purpose of having the sufficiency of his own answer determined in advance of the trial. In effect, it is the same as though he had answered and then demurred to his own answer in order to have its sufficiency determined. The question of the sufficiency of the answer is not before us. There is nothing in the record which discloses the trial court overruled the demurrer to the reply on the ground that defendant's answer stated no defense. Moreover, defendant contends his answer states a defense to the averments contained in the petition. Plaintiff has not contended otherwise. If the defense alleged was good, then plaintiff was required to reply to the new matter therein contained. On the other hand, if the answer did not state a valid defense, then defendant's demurrer to the reply was still properly overruled for the simple reason that a bad answer does not require a good reply. In fact, a fatally defective pleading requires no answer at all. (*Beeler & Campbell Supply Co. v. Warren*, 149 Kan. 135, 139, 86 P. 2d 482.)

The ruling on the demurrer to the reply is sustained.